UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

February 16, 2022

LETTER TO COUNSEL:

    RE:   *Yvette R. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
           Civil No. TJS-20-3353

Dear Counsel:

    On November 18, 2020, Plaintiff Yvette R. petitioned this Court to review the Social Security Administration's final decision to deny her claim for supplemental security income ("SSI"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 14 & 19. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

    Yvette R. protectively filed her application for SSI on March 16, 2018. Tr. 11. She alleged a disability onset date of September 1, 2008. *Id.* Her application was denied initially and upon reconsideration. *Id.* Yvette R. requested an administrative hearing, and a hearing was held on December 10, 2019, before an Administrative Law Judge ("ALJ"). Tr. 106-37. In a written decision dated February 5, 2020, the ALJ found that Yvette R. was not disabled under the Social Security Act. Tr. 8-28. The Appeals Council denied Yvette R.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-7.

    The ALJ evaluated Yvette R.'s claims for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. At step one, the ALJ found that Yvette R. had not engaged in substantial gainful activity since March 16, 2018, the application date. Tr. 13. At step two, the ALJ found that Yvette R. suffered from the following severe impairments: dysfunction major joints, vision (monocular vision, blind right eye), asthma, and peripheral neuropathy. Tr. 13-15. At step three, the ALJ found that Yvette R.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404,

---

[1] This case was originally assigned to Judge Boardman. On June 30, 2021, it was reassigned to Judge Coulson. On January 31, 2022, it was reassigned to me.

Subpart P, App. 1 ("Listings"). Tr. 15-16. The ALJ determined that Yvette R. retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except: occasionally climb stairs, balance, kneel, crouch, and crawl; should never climb ladders; has monocular vision, meaning she is blind in the right eye and in the right eye has no depth perception, no field of vision, and no visual acuity[;] however, claimant has appropriate and sufficient vision in the left eye such that she possesses the ability to avoid ordinary workplace hazards, such as a door ajar or a box on the floor; and should avoid concentrated exposure to hazards, pulmonary irritants, extreme cold, extreme heat, and vibration.

Tr. 16.

At step four, the ALJ determined that Yvette R. had no past relevant work. Tr. 22. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Yvette R. can perform, including packer and packaging worker, grading and sorting worker, and ticket taker. Tr. 22-23. Accordingly, the ALJ found that Yvette R. was not disabled under the Social Security Act. Tr. 23.

Yvette R. argues that this case must be remanded for further proceedings because (1) the ALJ did not perform a function-by-function assessment of her work-related abilities; (2) the ALJ did not properly evaluate her mental impairments; (3) the ALJ mischaracterized the evidence; and (4) the ALJ did not properly evaluate her subjective complaints. ECF No. 14-1 at 3-17. For the reasons discussed below, however, these arguments are without merit.

First, Yvette R. argues that the ALJ failed to perform a function-by-function assessment of her work-related abilities. ECF No. 14-1 at 6-8. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). An ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (alteration in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). In doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.").

The ALJ's decision contains a detailed discussion of the evidence of record, including Yvette R.'s subjective reports of her condition over time, her reported daily activities, treatment notes containing observations of her condition over time, and medical opinions. Tr. 14-22. In addition to summarizing the evidence and explaining the weight that the ALJ assigned to it, the ALJ also explained how the evidence translated into the ALJ's RFC determination. Tr. 21-22. Contrary to Yvette R.'s argument, the ALJ's explanation is sufficient for this Court to conduct its

review. Because the ALJ explained how he weighed and considered the evidence, and because substantial evidence supports the ALJ's findings, Yvette R.'s argument on this point is without merit.

Further, in assessing RFC, the ALJ must discuss a claimant's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)" and must "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 WL 374184, at *7. In connection with the ALJ's detailed discussion of the evidence, and after citing the relevant regulations and policy interpretation ruling, *see* Tr. 13, the ALJ determined the work activities that Yvette R. can perform on a full-time basis. Substantial evidence thus supports the ALJ's RFC determination.

Second, Yvette R. contends that the ALJ did not evaluate properly her mental impairments under the "special technique" outlined in 20 C.F.R. § 416.920a. ECF No. 14-1 at 8-12. When ALJs evaluate the severity of a claimant's mental impairment, they "must follow a special technique." 20 C.F.R. § 416.920a; *see Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 661 (4th Cir. 2017) ("The special-technique regulation's plain language describes what the SSA *must* do."). "The special-technique regulation affects how an ALJ evaluates and documents his process at steps 1 through 4 if the claimant alleges a *mental* impairment." *Patterson*, 846 F.3d at 659. This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself" (the "paragraph B criteria" of the listings for mental disorders as explained in 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b)).  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b). According to the regulations, if the degree of limitation in each of the four areas is rated "none" or "mild," then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe," "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)); *see Patterson*, 846 F.3d at 662, 659. The "failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review."

*Patterson*, 846 F.3d at 662.

Here, the ALJ found that Yvette R.'s mental impairments were not severe because she had "mild limitation in the four areas of functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself." Tr. 14. The ALJ reviewed Yvette R.'s allegations (which contradicted her statements in her function reports), her normal mental status examinations since her application date, and the state agency psychological consultants' prior administrative medical findings that Yvette R.'s mental impairments were not severe. Tr. 14-15, 20-21. "Contrary to [Yvette R.'s] argument, the ALJ's opinion contains sufficient analysis to allow [the Court] to review the basis for his findings. Notably, the ALJ thoroughly evaluated and cited to [Yvette R.'s] mental health assessments and treatment records to support the RFC assessment." *Love v. Comm'r, Soc. Sec. Admin.*, Civil No. PWG-17-681, 2017 WL 6368620, at *2 (D. Md. Dec. 13, 2017) (Gallagher, J.), *report and recommendation adopted*, 2018 WL 3458715 (D. Md. Jan. 5, 2018). These findings and records provide substantial evidence for the ALJ's determination regarding Yvette R.'s functional limitations. "The ALJ therefore properly considered and discussed [Yvette R.'s] mental impairments in accordance with the 'special technique' set forth in § [416.920a]." *Id.* at *3. Plaintiff's argument on this point is thus without merit. *See Gloria M. v. Saul*, Civil No. TMD 19-2154, 2020 WL 3402299, at *5 (D. Md. June 19, 2020).

Third, Yvette R. argues that the ALJ mischaracterized evidence of her hospitalization as an accidental medication overdose. ECF No. 14-1 at 12-13. "This Court is not empowered to make findings of fact," however. *Kenneth L. v. Kijakazi*, Civil No. SAG-20-624, 2021 WL 4198408, at *3 (D. Md. Sept. 15, 2021) (Gallagher, J.) (citing 42 U.S.C. § 405(g)). Yvette R.'s contention is thus also unavailing.

Last, Yvette R. argues that the ALJ did not properly evaluate her subjective complaints. ECF No. 14-1 at 13-17. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* To evaluate a claimant's statements, ALJs must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020). In other cases, the ALJ may consider that objective evidence, or lack thereof, in conjunction with other evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). In any case, the ALJ may not rely solely on the lack of objective medical evidence to discredit a claimant's subjective statements. *Id.* Claimants are entitled to rely exclusively on subjective evidence to prove the degree

to which their symptoms affect their ability to work at the second step of the analysis. *Arakas*, 983 F.3d at 95-97.

The ALJ's written decision presents a detailed statement of Yvette R.'s subjective complaints. The ALJ first found that Yvette R.'s severe impairments could reasonably be expected to produce her alleged symptoms. Tr. 17. The ALJ then proceeded to consider Yvette R.'s allegations in concert with the other evidence in the record, including Yvette R.'s statements about her symptoms over time, the extent of her daily activities, the opinion evidence, and the objective evidence in the record. Tr. 14-15, 17-21. In considering the totality of the evidence, the ALJ explained his finding that Yvette R.'s statements about the severity of her symptoms could not be completely reconciled with other persuasive evidence. Weighing all of the evidence, the ALJ found that Yvette R.'s impairments are not disabling and that she can perform work with the limitations contained in the RFC.

"Where the ALJ did consider [Yvette R.'s] full treatment history, as is clear here, it is not proper on appeal for the Court to reweigh such evidence." *Carollyn S. v. Kijakazi*, Civil Action No. ADC-20-2552, 2021 WL 4170431, at *9 (D. Md. Sept. 14, 2021). And Yvette R. "cannot rely exclusively on subjective evidence to prove that her mental impairments prevent her from working a full eight-hour day." *Carolyn G. v. Kijakazi*, Civil Action No. ADC-20-1363, 2021 WL 2982129, at *5 (D. Md. July 15, 2021). "Had the ALJ relied exclusively on a lack of objective evidence, the analysis would be flawed. Here, however, the ALJ considered the inconsistency of [Yvette R.'s] alleged symptoms with objective evidence as just one component of the assessment." *Jai P. v. Saul*, Civil No. TJS-19-3371, 2021 WL 424469, at *2 (D. Md. Feb. 8, 2021) (citation omitted). "Because the ALJ did not rely exclusively on objective evidence in assessing the severity of [Yvette R.'s] symptoms, this argument is without merit." *Id.* Substantial evidence supports the ALJ's evaluation of Yvette R.'s subjective complaints.

In short, the Court's review is confined to whether substantial evidence supports the ALJ's decision and whether the correct legal standards were applied. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Court is not permitted to reweigh the evidence, even if the Court believes the ALJ could have reached a different conclusion. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's decision complies with the governing legal standards and is supported by substantial evidence. The Court thus affirms the Acting Commissioner's final decision.

For the reasons set forth above, Yvette R.'s Motion for Summary Judgment (ECF No. 14) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 19) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                                      Sincerely yours,

                                                      /s/
                                                      Timothy J. Sullivan
                                                      United States Magistrate Judge